**In re Proposed Sale of County Land**

*Charles W. Wolf*, for petitioner.

*Donald G. Oyler*, for purchasers.

SHEELY, P. J., February 10, 1964.—The Board of Commissioners of Adams County have presented their petition asking the court's approval of a proposed private sale of a portion of the former county home property to J. C. Donley and Florence B. Donley for the sum of $7,500. A hearing on the petition was held on January 6, 1964, and the court is now required to "make such order and decree as shall seem right and proper": section 2306 of The County Code of August 9, 1955, P. L. 323, 16 PS §2306.

The tract proposed to be sold is irregularly shaped and contains 2 acres and 152 perches fronting 201.56 feet on the west side of the Harrisburg road and having a maximum depth of 780.8 feet on its nortern side. The southern line is parallel to the northern line for a depth of 390.8 feet and then tapers northwestwardly for 323.39 feet to the western line which is 63.68 feet long. The tract is the southernmost portion of the county home property and adjoins, for the most part, the rear of properties on the north side of East Broadway among which is the property of the proposed purchasers located at the corner of East Broadway and the Harrisburg road.

A member of the board of commissioners testified that the land was no longer needed or useful for county purposes, and two real estate experts testified that in their opinion the price was fair and reasonable and a better, or at least as high price than could be obtained at a public sale.

The county surveyor, who is also borough engineer for the Borough of Gettysburg, appeared and objected

to the sale primarily because the northern line of the tract proposed to be sold is the center line of a suggested or proposed street running from the Harrisburg road to Carlisle Street and running for 780.8 feet through county land. If the proposed street were laid out and the land developed into building lots, there would be approximately 780 feet of building lots on the northern side with unlimited depth, and approximately 660 feet on the southern side with a depth of from 100 feet to approximately 140 feet all on land presently owned by the county. There would also be approximately 120 feet on the southern side of the street of lesser depth which could be used for trading purposes to straighten lines, etc. According to him, building lots have a sale value of $35 a front foot which would mean a potential value of a considerable sum of money for the land included in the proopsed sale. Of course, the land in its present condition would not be worth the sum total of this potential value as considerable expense would be involved in developing the area and laying out the proposed street, etc. The important point developed in his testimony, however, was that the sale of this tract to the center line of the proposed street would, to a large extent, destroy the area for development purposes unless the purchasers were willing to join in the project. For reasons which need not be discussed here the proposed street could not be laid out at another location except at greatly increased cost.

The board of commissioners were cognizant of the proposed street plan when they agreed to this sale; in fact, their draft of the land indicates the lines of the proposed street. They were of the opinion, however, that land adjoining a street should run to the center line of that street. This is usually, or often the case, but in this situation there is presently no street and, in order to lay out and open a street, it would be necessary for the purchasers to join in the project or for the

48

municipality involved to condemn a portion of their land.

It was further pointed out at the hearing that 200 feet of frontage on the Harrisburg road, if sold as building lots, would have a sale value of $7,000 based on $35 a front foot. If that section were sold on that basis, a sum nearly equal to the proposed sale price would be realized with the county continuing to own the land to the rear of such lots and without interfering with the proposed street.

An important question in the sale of public land is the use to which it will be put and the value which it will subsequently have as a basis for taxation. Land which will remain vacant and unused will not be nearly so valuable for tax purposes as land on which dwelling houses will be erected. By the same token, consideration must be given to the effect which the sale of a portion of public land will have upon the remainder of such land. It would not be good business to sell a portion of a tract of land if the effect of that sale would be to destroy the potential value of the remainder of the tract for any use to which it might reasonably be put.

What has been said herein is not to suggest that the county could, or should, go into the real estate development business. But the possibility of the sale of some of its land for that purpose cannot be overlooked.

For these reasons we are constrained to agree with the reasoning of the county surveyor and to conclude that, taking all factors into consideration, the proposed sale at the price indicated is not in the best interest of the county and that the court cannot approve it.

And now, February 10, 1964, the petition of the Board of Commissioners of Adams County for approval of the sale of a portion of county land is refused.